**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

ANNE MAUREEN DOWLING,

      Plaintiff,

v.

UNITED AIRLINES, INC.;
MONTE MICHAEL WEDL,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

      COMES NOW the Plaintiff, Anne Dowling, by and through undersigned counsel, and for her causes of action and claims for relief against the Defendants, states and alleges as follows:

### I. INTRODUCTION

1.      Plaintiff Anne Dowling ("Dowling") brings this action pursuant to the common-law of the State of Colorado and The Montreal Convention, June 23, 2000, S. Treaty Doc. No. 106–45, 2242 U.N.T.S. 309, seeking redress for damages in excess of $75,000 USD as a result of Defendant's negligent and wrongful acts and omissions.

### II. PARTIES

2.      Dowling is and has been a citizen of the State of Colorado during the time material to this Complaint.

3.      Upon information and belief, Defendant Monte Wedl ("Wedl") is a citizen of the State of Tennessee and resided in Hong Kong during the time material to this Complaint.

4.      Defendant United Airlines, Inc. ("United") is a citizen of the State of Delaware and the State of Illinois because it is incorporated in Delaware with its principal place of business in Illinois.

5.      United was licensed to conduct business and indeed was conducting business in the State of Colorado during the time material to this Complaint.  Such business included, but may not have been limited to, providing passenger airline flights between Denver, Colorado and twenty-three (23) separate destinations within the United States, including San Francisco, California.

6.      At all times material to this Complaint, United maintained a registered agent for service in the State of Colorado.

### III. JURISDICTION AND VENUE

7.      All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

8.      The Court may properly maintain jurisdiction over United because: (1) United conducts substantial business in the State of Colorado and Dowling's claims arise from such business, Colo. Rev. Stat. Ann. § 13-1-124(1)(a); (2) Dowling's claims arise from United's commission of a tortious act within the State of Colorado, Colo. Rev. Stat. Ann. § 13-1-124(1)(b); and (3) United's contacts with the State of Colorado and this Court are sufficient to support an exercise of jurisdiction that comports with traditional notions of fair play and substantial justice.

9.      The Court may properly maintain jurisdiction over Wedl because Dowling's claims arise from Wedl's commission of a tortious act within the State of Colorado. Colo. Rev. Stat. Ann. § 13-1-124(1)(b).

///

///

10.     The Court has original subject-matter jurisdiction over all claims asserted herein because the amount in controversy, exclusive of interest and costs, exceeds $75,000 and the suit is between citizens of different states.  28 U.S.C. § 1332(a)(1).

11.     Pursuant to 28 U.S.C. § 1331, the Court has original subject-matter jurisdiction over Dowling's claim arising from the Montreal Convention.

12.     Venue is proper in the United States District Court, District of Colorado because under 28 U.S.C. § 1391(c)(2), United resides in the judicial district, and a substantial part of the events or omissions giving rise to Dowling's claims occurred in the judicial district.  28 U.S.C. § 1391.

### IV. FACTS COMMON TO ALL CLAIMS FOR RELIEF

13.     All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

14.     On July 6, 2016, Dowling's employer purchased her a ticket from Hong Kong to San Francisco aboard United's airliners.  Her expected arrival in San Francisco was July 9, 2016, at 9:15 a.m.

15.     On July 7, 2016, Dowling purchased a ticket from United for travel aboard their airliner from San Francisco to Denver using a Visa credit card with a Denver, Colorado billing address. Her expected departure from San Francisco was July 9, 2016, at 10:55 a.m.

16.     In other words, Dowling was to fly United from Hong Kong to Denver via San Francisco.

17.     As Dowling was boarding the flight from Hong Kong to San Francisco, United upgraded her from economy class to business class.  United assigned Dowling to seat 8D, which was the second seat in from the aisle.

18.     United seated Monte Wedl in seat 8C: the seat between Dowling and the aisle.

19.     Several hours after takeoff, United dimmed the lights in the cabin to facilitate its passengers' sleep.

20.     After the lights were dimmed, Dowling reclined her seat and fell asleep.

21.     United employees served Wedl at least three to four vodka sodas, which he consumed along with the prescription sleep medication Ambien.

22.     Wedl got out of his seat and approached United's flight attendant, Eva Yu ("Yu"), and told her that he had been away from home for two months, he missed his wife, and he is horny. Yu instructed him to return to his seat, and he did so.

23.     Dowling awoke to find Wedl's hand on the back of her leg near her buttock.  She removed his hand and fell back asleep.

24.     Dowling awoke a second time to Wedl's hand rubbing her thigh, grabbing her butt, and attempting to reach into her pants.  She cried "stop" and he withdrew his hand from her body. She asked him what he was doing, and he creepily smiled at her in response.  Dowling again went back to sleep.

25.     Dowling awoke a third time to Wedl's hand running up her thigh.  Wedl forced his hand between Dowling's body and her own hand.  He then firmly began rubbing her vagina through her clothes.  At the same time, Wedl was rapidly masturbating underneath his blanket.  Dowling shot out of her seat in shock when she realized what was happening and told Wedl to stop.

26.     Dowling was gathering her belongings in anticipation of moving seats when Wedl said something to the effect of "I think you're horny and I'm horny too."

27.     Dowling got out of her seat, approached a United flight attendant, and asked to move seats because of the assault.  The flight attendant told Dowling there were no open seats on the

plane.  Dowling persisted in her request, and the flight attendant suggested that Dowling go talk to Wedl.  Dowling declined to speak with the man who had just sexually assaulted her.

28.     Frustrated with the flight attendant's response, Dowling spoke with a United purser. After Dowling described what happened, the purser said something to the effect of "this is not okay, but I'm not shocked."  The purser eventually allowed Dowling to move to seat 8G for the remainder of the flight.

29.     The Hong Kong to San Francisco flight landed sometime in the morning of July 9, 2016. In a thinly veiled attempt to minimize, disregard, and ignore the assault, Wedl continued his torment of Dowling by approaching her as she was leaving the plane and asked her why she moved seats.  Dowling stated it was obviously because he had sexually assaulted her.

30.     Dowling boarded her United flight to Denver shortly after arriving in San Francisco.  She arrived in Denver later that day.

31.     On July 10, 2016, Dowling reported the assault to United, the San Francisco Police Department, and the Federal Bureau of Investigation.

32.     On December 5, 2016, a criminal complaint was filed in the United States District Court for the Northern District of California against Wedl for the assault.

33.     On June 8, 2017, Wedl was acquitted of all charges.

### V. CAUSES OF ACTION

First Claim: Montreal Convention
Against United

34.     All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

35.     At the time of this incident, United was engaged in international carriage as defined in Article 1 of the Montreal Convention, and the Montreal Convention is therefore applicable to this action, pursuant to that same Article.

36.     Pursuant to Articles 17 and 21 of the Montreal Convention and 2010 inflation adjustments, United is strictly liable for damage sustained in an "accident" causing bodily injury to a passenger on board the aircraft up to 113,100 Special Drawing Rights.  United is also liable for damages beyond 113,100 Special Drawing Rights unless United proves that (a) such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or (b) such damage was solely due to the negligence or other wrongful act or omission of a third party.

37.     As a result of the series of sexually motivated assaults Dowling suffered aboard United's airliner on or about July 9, 2016, and their aftermath, Dowling suffered physical pain and suffering, shock, emotional distress, embarrassment, mortification, anxiety, anguish, loss of enjoyment of life, loss of past and future income, loss of past and future medical expenses, and further injuries and damages as will be proven at trial.

38.     United and/or its employees acted negligently, acted wrongfully, and wrongfully omitted actions in a manner that directly and proximately caused and/or contributed to Dowling's injuries, including, but not limited to:

   a.     United employees served Wedl excessive alcohol prior to the sexual assaults perpetrated on Dowling.

   b.     United employees, in a position of authority over the passengers during the flight and on notice of Wedl's inappropriate, sexualized behavior, instructed Wedl to return to his seat next to Dowling.

c.   United employees, on notice of Wedl's inappropriate, sexualized behavior, took absolutely no precautionary measure(s) to prevent Wedl from assaulting Dowling. Alternatively, any precautionary measure(s) United did take were insufficient.

d.   United employees, on notice of the sexual assault perpetrated by Wedl and in a position of authority over the passengers during the flight, attempted to make Dowling return to and sit in the seat next to Wedl shortly after he had committed a series of sexual assaults against her.

e.   United employees, on notice of the sexual assault perpetrated by Wedl and in a position of authority over the passengers during the flight, attempted to make Dowling go and speak with Wedl shortly after he had committed a series of sexual assaults against her.

f.   United employees, on notice of the sexual assault perpetrated by Wedl and in a position of authority over the passengers during the flight, failed to prevent Wedl from continuing his torment of Dowling when he approached her and spoke to her as she waited to exit the plane.

g.   United failed to adequately train personnel and/or failed to adopt and/or failed to execute sufficient policies or procedures to prevent, deter, or properly respond to sexually assaults on their flights.

39.   As a direct and proximate result of the incident described herein, and the negligent and tortious actions of United and/or its employees, Dowling has suffered injuries and damages as are described below.

///

///

## Second Claim: Negligence – Common Carrier
## Against United

40.     All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

41.     As a common carrier, United and/or its employees owed its passengers, including Dowling, the duty to exercise the highest degree of care.  Such duty included, but was not limited to, preventing and protecting Dowling from sexual assaults committed by other passengers.

42.     United and/or its employees breached such duty to Dowling by, *inter alia*, the actions and omissions listed in paragraph 40 of this Complaint.

43.     As a direct and proximate result of the breach of the duty United and/or its employees owed to Dowling, Dowling has suffered injuries and damages as are described below.

## Third Claim: Assault
## Against Wedl

44.     All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

45.     Wedl intended to cause harm or offensive contact with Dowling or to cause Dowling apprehension of an immediate harmful or offensive contact.

46.     Wedl had the present ability or unmistakable appearance of the present ability to cause Dowling harm.

47.     Wedl caused Dowling reasonable apprehension of an immediate harmful or offensive contact.

48.     Dowling did not consent to the harm and offensive contact or threat thereof.

49.     As a direct and proximate result of the assault, Dowling has suffered injuries and damages as are described below.

<u>Fourth Claim: Battery</u>
<u>Against Wedl</u>

50.     All of the allegations contained in the preceding paragraphs of this Complaint are

incorporated by reference herein as if the same were set forth in full.

51.     Wedl intended to cause harm and offensive contact with Dowling or to cause Dowling

apprehension of an immediate harmful or offensive contact.

52.     Wedl caused harm and offensive contact with Dowling.

53.     Dowling did not consent to the harm and offensive contact.

54.     As a direct and proximate result of the battery, Dowling has suffered injuries and

damages as are described below.

<u>Third Claim: Intentional Infliction of Emotional Distress</u>
<u>Against Wedl</u>

55.     All of the allegations contained in the preceding paragraphs of this Complaint are

incorporated by reference herein as if the same were set forth in full.

56.     Wedl's conduct was extreme and outrageous.

57.     Wedl intended to cause Dowling emotional distress or acted with reckless disregard of

the probability that Dowling would suffer emotional distress or both.

58.     Wedl's conduct caused Dowling to suffer severe emotional distress.

59.     As a direct and proximate result of the conduct, Dowling has suffered injuries and

damages as are described below.

<u>Fourth Claim: Negligence</u>
<u>Against Wedl</u>

60.     All of the allegations contained in the preceding paragraphs of this Complaint are

incorporated by reference herein as if the same were set forth in full.

61.     Wedl owed Dowling the duty to act as a reasonably careful person would act under the circumstances.

62.     Wedl breached such duty to Dowling by, *inter alia*, repeatedly and inappropriately touching her.

63.     As a direct and proximate result of the breach of the duty Wedl owed to Dowling, Dowling has suffered injuries and damages as are described below.

Fifth Claim: Gross Negligence
Against Wedl

64.     All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

65.     Wedl's conduct was willful or wonton, i.e. his conduct created an unreasonable risk of harm to Dowling and the risk was so great that it was highly probable that harm would result.

66.     Wedl's negligent acts were done with utter lack of concern for the safety of Dowling.

67.     As a direct and proximate result Wedl's willful or wonton conduct, Dowling has suffered injuries and damages as are described below.

Punitive Damages
Against Wedl

68.     All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

69.     Wedl's conduct was intentional, willful and wonton, and reckless.

70.     Wedl acted in reckless disregard of the consequences for his wrongful acts, and under such circumstances and conditions that a reasonable person would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to Dowling.

71.     Wedl's conduct involved elements of outrage, similar to that usually found in crime.

## VI. DAMAGES

72.     All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

73.     As a direct and proximate result of the incident described herein, and the negligent and tortious actions of Wedl and United and/or its employees, Dowling has suffered in the past, continues to suffer presently, and will suffer in the future, damages which include, but are not limited to: physical pain and suffering; shock; emotional distress; embarrassment; mortification; anxiety; anguish; depression; loss of enjoyment of life; loss of income; expense of medical care, including counseling, and other medical special damages; and further injuries and damages as will be proven at trial.

74.     As a direct and proximate result of the incident described herein, Dowling was diagnosed with Post Traumatic Stress Disorder in Colorado, which causes her sleeplessness, nightmares, irritability, anxiety, and apathy, all of which have primarily occurred in Colorado.

75.     As a direct and proximate result of the incident described herein, Dowling has been receiving counseling in Colorado since June 2017.

## VII. PRAYER FOR RELIEF

76.     WHEREFORE, Dowling prays for judgment against United, in amounts to be proven at trial, for damages as outlined above, and as follows:

    a.     For Dowling's general damages for physical pain and suffering, shock, emotional distress, embarrassment, mortification, anxiety, anguish, and loss of enjoyment of life.

b.      For all past, present, and future special damages, including, but not limited to, all medical and counseling expenses, lost earnings and earning capacity, and all other recoverable special damages as may result from the injuries to Dowling alleged in this Complaint.

c.      For all other general and special damages recoverable under Colorado State law, the Montreal Convention, or any other applicable law or treaty.

d.      For pre-judgment and post-judgment interest.

e.      For costs and reasonable attorneys' fees as allowable by law.

f.      For other and further relief as the Court may deem just and equitable.

## VIII. JURY DEMAND

Dowling hereby demands a jury trial on all issues in this matter.

DATED this 5th day of July 2018.

                                        s/ Robert Stepans
                                        **Robert Stepans**
                                        Meyer, Shaffer & Stepans, PLLP
                                        3490 Clubhouse Drive, Suite 104
                                        Wilson, WY 83014
                                        Telephone: (307) 734-9544
                                        E-mail: rob@mss-lawfirm.com
                                        Attorney for Plaintiff